In the United States District Court
for the District of Kansas

———————

Case No. 23-cv-02423-TC

———————

MICHAEL H.,[1]

*Plaintiff*

v.

MARTIN O'MALLEY,
COMMISSIONER OF SOCIAL SECURITY

*Defendant*

———————

**MEMORANDUM AND ORDER**

Michael H., proceeding pro se, claims that he is disabled and cannot work due to a combination of medical issues and psychological impairments. Doc. 1 at 3. He seeks review of the final decision of the Commissioner denying him disability insurance benefits. *Id.* For the following reasons, the Commissioner's final decision is affirmed.

**I**

**A**

**1**. Federal district courts have jurisdiction, upon timely request, to review the Commissioner's final administrative decisions. 42 U.S.C. § 405(g). These cases require a careful review of the record to determine whether "substantial evidence supports the factual findings and whether the [administrative law judge] applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) (citing *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)). Evidence in support

———————

[1] Plaintiff is referred to only by first name and initials to protect his privacy. *See, e.g., Joseph M. v. Kijakazi*, No. 22-1065, 2023 WL 2241526, at *5 (D. Kan. Feb. 27, 2023).

of a finding is substantial if "a reasonable mind might accept [it] as adequate to support a conclusion," and therefore must be "more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The ALJ's findings must be grounded in substantial evidence and demonstrate that the ALJ "consider[ed] all relevant medical evidence in making those findings." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citing *Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989)). Consequently, a court will "not re-weigh the evidence or try the issues de novo," but will "meticulously examine the record as a whole . . . to determine if the substantiality test has been met." *Id.*

**2.** To evaluate an application for disability benefits, the Commissioner uses a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a)(4) (disability insurance), 416.920(a)(4) (supplemental security income); *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Wilson*, 602 F.3d at 1139 (quoting *Lax*, 489 F.3d at 1084). The claimant bears the burden of proof for the first four steps, but the Commissioner does for the fifth. *Hackett v. Barnhart*, 395 F.3d 1168, 1171 (10th Cir. 2005). In the first three steps, the Commissioner determines whether the claimant has engaged in substantial gainful activity since the alleged onset of the disability, whether the claimant has any severe impairments, and whether any of those impairments meets or equals the severity of any impairment in the Listing of Impairments found in 20 C.F.R., Pt. 404, Subpt. P, App. 1. 20 C.F.R. §§ 404.1520(a)(4)(i)–(iii), 416.920(a)(4)(i)–(iii); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988).

The fourth and fifth steps of the analysis depend on the claimant's residual functional capacity (RFC), which the Commissioner assesses after completing the third analytical step. 20 C.F.R. §§ 404.1520(e), 416.920(e). A claimant's RFC is the most the claimant can do despite limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The Commissioner determines the claimant's RFC based on all relevant evidence in the record. SSR 16 3p, 2017 WL 5180304, at *4–*5 (Oct. 25, 2017).

After analyzing the claimant's RFC, the Commissioner proceeds to the fourth and fifth steps of the analysis. At step four, the Commissioner determines whether the claimant can perform his or her past relevant work considering his or her RFC. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If so, the claimant is not disabled. *Id.* At step five, the Commissioner bears the burden to show—in light

of the claimant's RFC, age, education, and work experience—that suitable work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c)(2), 416.960(c)(2).

**3.** Plaintiff is proceeding pro se, which requires a generous construction of his pleadings. *See Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009). That generosity means a court should overlook the failure to properly cite legal authority, confusion of various legal theories, poor syntax and sentence construction, or apparent unfamiliarity with pleading requirements. *Id.* But, importantly, it does not permit the construction of legal theories on his behalf, or the assumption of facts not pled. *See id.*; *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

## B

Michael H., a veteran and former law enforcement officer, claims that a combination of medical issues (including but not limited to degenerative disc disease of the cervical spine, cataracts, and mental health conditions such as depression, obsessive compulsive disorder, and PTSD) prevent him from participating in gainful activity. *See* Adm. Rec. at 19.[2] He was initially denied benefits in November 2021. Adm. Rec. at 16. He subsequently requested a hearing, which was held before an ALJ in December 2022. *Id.* As he was unable to testify entirely on his own, Plaintiff's wife testified at the hearing that based on her personal observations Plaintiff is typically "confused, weak, agitated, [and] ill," and that "[h]is body stiffens up on him." Adm. Rec. at 53. Plaintiff added that his "low vision" classification at the Veteran's Administration and his "PTSD, [major depressive disorder], and OCD" as well as neuropathy prevent him from returning to his former employment as a law enforcement officer. *Id.* at 59–62.

A decision unfavorable to his claim was issued in March 2023. Adm. Rec. at 30. No evidence pre-dating November 23, 2016 was considered as such evidence was considered and rejected in a prior case involving Plaintiff's previous claim for disability benefits dating to

---

[2] All document citations are to the document and page number assigned in the CM/ECF system, except for references to the Administrative Record (Adm. Rec.) which employ the internal record pagination.

2014. *Id.* at 17. Plaintiff's request for review was denied by the Appeals Council. Adm. Rec. at 1, 6.

The ALJ determined at step one of the five-step analysis that the Plaintiff had not engaged in substantial gainful activity dating to the alleged onset of disability on October 5, 2016. Adm. Rec. at 19. At step two, the ALJ noted severe impairments including "mild degenerative disc disease of the cervical spine; bilateral ischemic optic neuropathy; nuclear cataract bilaterally; ocular hypertension bilaterally; [and] obesity." Adm. Rec. at 19. The ALJ also noted PTSD, "depressive disorder," OCD, and "alcohol abuse, in remission." *Id.* These conditions were determined to "significantly limit the ability to perform basic work activities." *Id.* Several diagnoses were not considered since they were diagnosed after the date last insured including chronic liver disease, cirrhosis, and low hemoglobin. Adm. Rec. at 19. Plaintiff's hypertension, hyperlipidemia, GERD, tremor, and Dupuytren's Disease were considered non-severe. *Id.*

At step three, the ALJ determined Plaintiff's medical impairments did not meet or medically equal the severity of a listed impairment. Adm. Rec. at 20. In particular, the ALJ analyzed Listing 1.15, 2.02, 2.03, 2.04, 12.04, 12.06, and 12.15, concluding that none of those listings were met. *Id.* The ALJ also considered Plaintiff's "obese body habitus" in light of SSR 19-2p, concluding that "no evidence" supported a finding of "medical equivalence" with a listing. *Id.* Plaintiff did have a "mild limitation" in "understanding, remembering or applying information," and had a "moderate limitation" in "interacting with others" and in "concentrating," as well as in "adapting or managing oneself." Adm. Rec. at 21.

Prior to moving to step four, the ALJ assessed a residual functional capacity to "perform light work." Adm. Rec. at 22. Specifically:

> The claimant was able to lift/carry 10 pounds frequently and 20 pounds occasionally; walk/stand for 6 hours in an 8-hour workday; and sit for up to 6 hours in an 8-hour workday. The claimant was limited to frequent extension, rotation, and flexion of the neck; no ladders, ropes or scaffolds, occasional crawling; frequent ramps and stairs, stoop, kneel, crouch, balance; no work at unprotected heights; no operation of motor vehicles or working around moving mechanical parts; no working around open pits or open bodies of water;

4

no requirement to work with small objects (e.g. smaller than a standard tennis ball); should not be required to read standard print (e.g. 12 pt. font) but can read larger print with the use of visual aids; cannot perform tasks requiring full depth perception. The claimant could perform simple, routine tasks in a low stress work environment with no production rate pace or quota requirements; could make simple work-related decisions; should have no interaction with the public; and occasional interaction with co-workers and supervisors.

The ALJ then determined that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms," but that Plaintiff's testimony regarding the severity of the symptoms was "not entirely consistent with the medical evidence." Adm. Rec. at 23.

To make that finding, the ALJ relied on exhibits detailing counseling sessions at the VA (e.g., Exhibit B1F/481), VA eye clinic records and mental health visits with the VA and with Social Workers dating from January through September 2018. *See* Adm. Rec. at 22–25. The ALJ also analyzed a primary care visit from October 2018 where Plaintiff had "a normal CT," "full range of motion turning his neck to the right but was slightly limited turning to the left," "a smooth gait," and "intact" neurological findings but "mild degenerative changes" in his "cervical spine." Adm. Rec. at 25. A May 2018 CT scan of the head "revealed no acute intracranial abnormality," and psychiatry progress notes from December 2018 noted "Euthymic" affect and "linear, logical" thought processes but assessed "PTSD, Major Depressive Disorder and Alcohol Use Disorder." Adm. Rec. at 26. The ALJ also considered the fact that VA records showed Plaintiff was "80% disabled" due to a combination of PTSD, migraines, and tinnitus. Adm. Rec. at 26. Because the VA "uses different standards than the Social Security Administration," the ALJ did not find the assessment of 80% disability "persuasive." Adm. Rec. at 27. Finally, the ALJ noted that state consultative exams noted "no acute distress, smooth gait, normal range of motion, negative straight leg raise, and normal neurological findings," as well as "mild" and "moderate" limitations in cognitive functioning. Adm. Rec. at 28. As the Plaintiff had "additional restrictions" due to his vision issues, the ALJ found the state exams only "partially persuasive" regarding physical limitations but "persuasive" regarding psychological ones. *Id.*

At step four, the ALJ determined that Plaintiff's RFC precluded him from performing past work, Adm. Rec. at 28, but at step five, the ALJ determined that Plaintiff was nevertheless able, given his RFC, age, education, and work experience, to perform jobs that existed in significant numbers in the national economy, Adm. Rec. at 29. Relying on the testimony of a vocational expert, the ALJ determined that Plaintiff could perform a portion of the full range of unskilled light work, including "inspector hand packager," "small product assembler," and "garment sorter." Adm. Rec. at 29. The ALJ therefore determined that Plaintiff was not disabled under the framework applicable to social security insurance benefits. Adm. Rec. at 30.

## II

The ALJ's decision was supported by substantial evidence and none of Plaintiff's counterarguments are persuasive. As a result, the Commissioner's final decision is affirmed.

### A

The substantial evidence standard requires a reviewing court to examine the administrative record and determine whether it contains "sufficient evidence to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (internal quotation marks omitted). Substantial evidence is not a "high" standard; it will be satisfied whenever the evidence for the ALJ's decision was "more than a mere scintilla." *Id.* (internal citations omitted).

The ALJ's decision applying the five-step process set out by law clears that low bar. She relied on the exhibits submitted in evidence, appropriately assessed the opinions of medical providers and the state consultants, analyzed, in detailed fashion, Plaintiff's testimony, and finally posed appropriate hypotheticals to the vocational expert to conclude that someone with Plaintiff's RFC could perform work that exists in significant numbers in the national economy. A federal district court is not "at liberty to second-guess" the ALJ's reasoned and supported determination. *Noreja v. Comm'r, SSA*, 952 F.3d 1172, 1181 (10th Cir. 2020).

None of the arguments Plaintiff raises on appeal disrupt that conclusion. Plaintiff primarily argues that the ALJ selectively ignored certain factual evidence, particularly medical records from Plaintiff's interactions with the United States Department of Veterans Affairs,

misinterpreted his statements to providers that he was doing okay, and did not explain what factual evidence she was relying on in making her decision. *See* Doc. 11 at 5, 7, 8, & 14. To the extent that Plaintiff does not identify any factual error the ALJ made—for example, that the ALJ was wrong about a diagnosis or inaccurately reported a medical opinion—his arguments are a request to weigh and interpret competing evidence in a different manner than the ALJ did. A reviewing court cannot do that. *See Staheli v. Comm'r, SSA*, 84 F.4th 901, 909 (10th Cir. 2023) (citing *Hendron v. Colvin*, 767 F.3d 951, 956 (10th Cir. 2014)). Moreover, the ALJ did not ignore evidence from the VA. Instead, she analyzed medical records from the VA in depth. *See* Adm. Rec. at 22–25. And in any case, a determination of disability by another government agency is not binding on the Social Security Administration. 20 C.F.R. § 404.1504 ("Because a decision by any other governmental agency … is based on its rules, it is not binding on us and is not our decision about whether you are disabled.").

Plaintiff's final factual argument that the ALJ was not afforded an opportunity to consider some of his vision complaints because a November 2023 cataracts surgery was unexpectedly cancelled is not persuasive. *Contra* Doc. 9 at 1–2. Any medical diagnoses after the date last insured (which was December 31, 2018) would not have been considered by the ALJ even if they were within the record. *See* Adm. Rec. at 19.

Plaintiff raises several legal arguments as well, but each is flawed. To begin, Plaintiff points to no support for his assertion that ALJs must possess medical training or be "medically certified or licensed" in order to determine benefits. *See* Doc. 11 at 7, 11. While medical professionals who perform consultative exams do have to be licensed, 20 C.F.R. § 404.1519g(b), neither Subpart P nor Subpart Q of Chapter III of Title 20 of the Code of Federal Regulations, the subparts pertaining to the five-step disability determination, contain any requirement that the ALJ hold a medical license. Furthermore, Plaintiff is incorrect to suggest that the ALJ had to support her decision with evidence that a specific workplace would "consider hiring the Plaintiff." *Contra* Doc. 11 at 7. Under existing law, it is enough to deny benefits at step five to determine that a hypothetical job Plaintiff could do exists "in significant numbers" in the national economy, notwithstanding whether such workplaces would actually hire the claimant. *See* 20 C.F.R. § 404.1560(c) (defining the test for whether a claimant can adjust to "other work"). Plaintiff's argument that the ALJ's decision violated

anti-pyramiding rules, Doc. 11 at 2, is also unsound. Pyramiding is a term the VA uses to refer to double counting symptoms caused by separate disabilities in determining what level of benefit a veteran is entitled to. Such double counting is prohibited by departmental regulations. *See* 38 C.F.R. § 4.14. That rule does not apply to disability determinations made outside the context of the VA and, in any event, it is not clear how the ALJ's decision could have violated it in denying Plaintiff's claim for disability insurance benefits. *Contra* Doc. 11 at 2.

### III

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

It is so ordered.

Date: August 1, 2024                    _s/ Toby Crouse_____
                                        Toby Crouse
                                        United States District Judge